Whitakek, Judge,
dissenting:
I respectfully dissent from the opinion of the majority. Under the terms of the merger of Cortland Equipment Lessors, Incorporated, into plaintiff, Safeway Stores, Incorporated, plaintiff assumed all obligations and liabilities of Cortland. It, therefore, assumed 'Cortland’s liability on the debentures. The corporate existence of Cortland ceased when the merger was consummated, and plaintiff, by the terms of the merger became primarily, indeed solely, liable on the debentures which had been issued by Cortland. Cf. Koppers Co., Inc. v. United States, 133 Ct. Cl. 22. It seems to me to follow from this that the debentures issued by Safeway after the merger were not evidence of a new obligation of Safeway; it was already primarily responsible on the debentures issued by Cortland. The debentures issued by Safeway were merely in lieu of, to take the place of, obligations on which it was already primarily liable. The terms of the Safeway debentures were identical with the terms of the Cortland debentures, including the maturity dates of the two. The debentures issued by Safeway, therefore, it seems to me, cannot be a “new issue”.
*530 Had there been no merger and had Cortland continued in existence and, under these circumstances, had Safeway issued its debentures in substitution for the Cortland debentures, I would agree that this was a new issue and subject to the stamp tax. But, after the merger Cortland ceased to exist and plaintiff became primarily liable on the Cortland debentures. The debentures it issued, therefore, it seems to me, were not a new issue, but merely evidence, in a different form, of an obligation on which Safeway was already primarily liable.
For this reason I respectfully dissent.
Laramore, Judge, joins in the foregoing dissent.
FINDINGS OE PACT
The court, having considered the evidence, the report of Trial Commissioner Boald A. Hogenson, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, a Maryland corporation with principal office at San Francisco, California, is and was engaged in the operation of a chain of retail grocery stores and supermarkets.
2. Cortland Equipment Lessors, Incorporated, was incorporated under Maryland laws in December 1945, and throughout its existence, was a wholly-owned subsidiary of plaintiff. At all times Cortland’s entire assets, consisting of facilities, machinery and equipment, were leased to plaintiff for use in the latter’s business, and its sole source of income consisted of rent received from plaintiff and gains realized upon disposition of returned leased property.
3. The lease between plaintiff and Cortland, dated December 31,1945, stated that plaintiff and its domestic subsidiaries had transferred to Cortland all furniture, machinery, equipment and appliances, including automotive equipment, owned by them, and such assets constituted the initial leased property subject to the lease. All additional items of furniture, machinery, equipment and appliances, including automotive equipment, which Cortland acquired at plaintiff’s request, constituted additional leased property which was also subject to the lease, when such property was accepted and identified by plaintiff.
*531 4. The lease between plaintiff and Cortland specified that the amount of the rent per quarter payable by plaintiff was the aggregate of: Quarterly depreciation on Cortland’s leased property; plus the amount of all interest due and payable during the quarter on Cortland’s approved loans; plus the total of all of Cortland’s operating charges and expenses, including state and Federal income taxes, for the quarter; plus $35,000 a quarter. In addition, plaintiff agreed to pay all taxes and assessments (except sales and excise taxes) on the leased property and to make all repairs to the leased property required to keep the same in good condition. The total rent was in no case to be less than the total undepre-ciated value of all items of leased property. The occurrence of the quarterly rent payment falling below 100 percent of the total interest and amortization of principal of Cortland’s loans for that quarter was an event of default.
5. Plaintiff filed Federal income tax returns separate and apart from Cortland on which it deducted as a business expense the rent it paid to Cortland.
6. Cortland filed Federal income tax returns separate and apart from plaintiff. Cortland reported as income the rent received from plaintiff and the gains realized upon the disposition of returned leased equipment. Cortland deducted as expenses: The interest it paid on outstanding loans, including the interest paid its debenture holders; the wages paid its employees and contributions to a retirement trust fund for their benefit; and the salaries of its officers who devoted their full time to its business.
For the calendar years 1954,1955, and 1956, Cortland paid Federal income taxes of $152,555.23, $102',378.29, and $166,652.20, respectively.
7. Plaintiff for its own purposes had organized Cortland and caused it to operate as a separate legal entity.
8. From time to time prior to October 1954, Cortland purchased additional leased property at plaintiff’s request, which became subject to the lease. It acquired the funds for these purchases by means of loans from banks and advances from plaintiff. The bank loans were paid by Cortland’s assigning to the lendor, with plaintiff’s consent and pursuant to the lease agreement, rent payable under the lease.
*532 9. In 1954 Cortland issued debentures to the public for the purpose of prepaying outstanding bank loans of $53,382,500, to repay plaintiff for advances of $16,266,002, and to acquire working capital to be used for general corporate purposes, including the purchase of additional equipment to be leased to plaintiff.
10. As a prerequisite to the issuing of debentures, pursuant to the Securities Act of 1933, on or about October 7, 1954, Cortland filed a registration statement with the Securities and Exchange Commission covering a proposed issue of $50,000,000 Serial Debentures, Series A, and $25,000,000 4%% Sinking Fund Debentures, Series B.
11. Under date of October 19,1954, the Assistant Director, Division of Corporation Finance, Securities and Exchange Commission, wrote to Cortland respecting its registration statement in part as follows:
It is our understanding that the present signature page (page II-5) will be retained and that another signature page will be added stating substantially that Safeway Stores, Incorporated disclaims that its obligations under the Lease and Instrument of Consent and Agreement referred to in the registration statement constitute “securities” as defined in the Securities Act of 1933, but to the extent that such obligations may constitute securities of Safeway under said Act it has signed the registration statement. There will follow the signatures of Safeway, its principal executive, financial and accounting officers and at least a majority of its board of directors. * * *
12. On October 21, 1954, Cortland filed an amendment to its registration statement, which states in part as follows:
Safeway Stores, Incorporated disclaims that its obligations under the Lease and Instrument of Consent and Agreement referred to herein constitute “securities” as defined in the Securities Act of 1933, but to the extent that such obligations may constitute “securities” of Safeway under said Act it has signed this Registration Statement.
*****
Pursuant to the requirements of the Securities Act of 1933, Safeway Stores, Incorporated has duly caused this amendment to the registration statement (No. *533 2-11202) to be signed (which, signing shall also be deemed to be a signing of the registration statement as originally filed) on its behalf by the undersigned, thereunto duly authorized, in the City of New York, and State of New York, on the 20th day of October, 1954.
Safeway Stores, Incorporated
By Milton L. Selby,
(Milton L. Selbt), Vice President.
Pursuant to the requirements of the Securities Act of 1933, this amendment to the registration statement (No. 2-11202) has been signed below (which signing shall also be deemed to be a signing of the registration statement as originally filed) by the following persons in the capacities and on the date indicated.
Subscribed under the last above-quoted paragraph on October 20, 1954, were the signatures of various officers of Safeway, either personally executed or by duly authorized attomey-in-fact, as follows: Lingan A. Warren, president and director, as principal executive officer; Milton L. Selby, vice president, secretary, treasurer and director, as principal financial officer; W. S. Mitchell, controller and director, as principal accounting officer; and as directors, Norman Chandler, Artemus L. Gates, C. N. Sanders, Dwight M. Cochran, George T. Burroughs, and A. B. Griffith.
13. Chief Counsel, Division of Corporate Finance, Securities and Exchange Commission, testified in the trial of this case that the reason that plaintiff was required to sign Cortland’s registration statement was not because plaintiff was a co-issuer of the Cortland debentures, but because plaintiff was the guarantor of such bonds and a guaranty of a security is itself a security within the meaning of that term as defined in the Securities Act of 1933.
14. The amendment to Cortland’s registration statement also included balance sheets and profit and loss statements of plaintiff, and statements of additional paid-in capital and earnings retained in the business of plaintiff, both as parent company and consolidated for portions of 1954 and various prior accounting periods.
15. Under date of November 1, 1954, Cortland executed an indenture (hereinafter called “original indenture”) with The Chase National Bank of the City of New York, as *534 trustee, covering the proposed issuance by Cortland of Serial Debentures, Series A, totaling a principal amount of $50,-000,000, maturing serially in the amount of $5,000,000 on each November 1 from 1955 to 1964, inclusive, each bearing interest as follows:
195.5 3. 00%
1956 3.15%
1957 3.25%
1958 3.35%
1959 3.45%
1960 3. 60%
1961 3. 70%
1962 3. 80%
1963 3. 90%
1964 4. 00%
and m% Sinking Fund Debentures, Series B, in the aggregate principal amount of $25,000,000, maturing on November 1, 1969, and bearing interest at 4% percent per annum.
16. Each form of debenture set forth in the original indenture contained in part the following statements:
This Debenture is one of a duly authorized issue of debentures of the Company (herein called the “Debentures”), in unlimited aggregate principal amount, of the series hereinafter specified, all issued and to be issued under an Indenture (herein called the “Indenture”), dated as of November 1,1954, between the Company and The Chase National Bank of the City of New York, as Trustee, to which Indenture and all indentures supplemental thereto reference is hereby made for a description of the nature and extent of the security, the terms and conditions upon which the Debentures are and are to be secured and the rights of the bearers or registered owners of the Debentures and coupons and of the Trustee in respect of such security. The Debentures may be issued for various principal sums, and may be issued in series, which may mature at different times, may bear interest at different rates and may otherwise vary as in the Indenture provided.
*****
To the extent permitted by the Indenture, modifications or alterations of the Indenture or of any indenture supplemental thereto and of the rights and obligations of the Company and of the holders of the Debentures and coupons may be made with the consent of the Company by the affirmative vote of the holders of not less than 60% in principal amount of the Debentures and by the affirmative vote of the holders of not less than 60% in principal amount of the Debentures of any series affected by such modification or alteration in case one or *535 more, but less than all, of the series of Debentures then outstanding under the Indenture are so affected, at a meeting of Debentureholders called and held as provided in the Indenture; provided however, that no such modification or alteration shall be made or effected which shall (1) extend the fixed maturity of any Debentures or reduce the rate or extend the time of payment of interest thereon, or reduce the amount of the principal thereof, or reduce any premium payable upon redemption thereof, or affect the right of the holders of any Debentures to institute suit for the enforcement of payment on or after the respective due dates expressed in such Debentures or in the coupons appertaining thereto, without the consent of the holder of each Debenture so affected, or (2) reduce the aforesaid percentage of the principal amount of Debentures the consent of the holders of which shall be required for the authorization of any such modification or alteration, without the consent of the holders of all debentures then outstanding, or (3) modify, without the written consent of the Trustee, the rights, duties or immunities of the Trustee.
The debenture prescribed in the original indenture called for the signature of Cortland Equipment Lessors, Incorporated, only.
17. The original indenture, as executed by Cortland (Company) and The Chase National Bank of the City of New York (Trustee), contains among others, the following-provisions :
artices n. Description and Manner of Execution, Authentication and Registration of Debentures.
^ # ifc ij:
Section 2.3. In case the Company, pursuant to Article X of this Indenture, shall be consolidated with or merged into any other corporation or shall convey, subject to this Indenture all or substantially all its property and assets, and the successor corporation resulting from such consolidation, or into which the Company shall have been merged, or which shall have received a conveyance as aforesaid, shall have executed an indenture with the Trustee pursuant to Article X hereof, any of the Debentures authenticated or delivered prior to such consolidation, merger or conveyance may, from time to time, at the request of the successor corporation and with the consent of the holders thereof, be exchanged for other Debentures of the same series and of the same maturity executed in the name of the successor corpora *536 tion with such changes in phraseology and form as may be appropriate, but otherwise in substance of like tenor as the Debentures surrendered for such exchange and of like principal amount; and the Trustee, upon the request of the successor corporation, shall authenticate and deliver Debentures as specified in such request for the purpose of such exchange.
*****
ARticle iv. Provisions as to the Collateral.
Section 4.1. All rent and all other amounts payable on and after April 26, 1955 under and pursuant to the Lease to Safeway and all right, title and interest of the Company as Lessor in and to the Lease to Safeway have been transferred to the Trustee as herein provided. * * * but it is hereby expressly agreed and provided, however, that the Trustee shall not take any action with respect to the Lease to Safeway or to enforce any of its provisions or any of the agreements of Safeway made in the Instrument of Consent and Agreement (a copy of which is attached hereto as Schedule B) unless and until an event of default as defined in Article VII hereof shall have occurred and be continuing.
Section 4.2. Cash received by the Trustee under and pursuant to any provisions of the Lease to Safeway shall be set apart and held by the Trustee in a separate account to be known as the “Cash Collateral Account” and shall be applied by the Trustee from time to time to the payment of the interest on and the principal of the Debentures. On or promptly after each date of payment of interest on the Debentures, however, and at any time up to the next succeeding rent payment date provided in paragraph 3A and B of the Lease to Safeway, the Trustee shall, on receipt of a written request so to do, signed by the President, any Vice-President, the Secretary, any Assistant Secretary, the Treasurer, or any Assistant Treasurer of the Company, pay over to the Company for its account, all moneys received and then held unexpended in the Cash Collateral Account, subject to the following conditions: (a) That an event of default * * * shall not, to the knowledge of the Trustee, have occurred and be continuing; * * *.

& # % %

article v. Covenants of the Company.
The Company covenants that:
Section 5.1. The Company will punctually pay the principal and interest and premium, if any, to become *537 due in respect of all the Debentures according to the terms thereof. * * *
# % ❖
Section 5.10. Safeway shall at all times own all issued and outstanding shares of capital stock of the Company, except directors’ qualifying shares.
* * # * *
Section 5.12. The Company will not (a) cancel the Lease to Safeway or (b) accept a surrender thereof or (c) modify or consent to the modification of any of the terms or provisions of the Lease to Safeway or the assignment thereof to the Trustee or (d) reduce or permit any reduction of the rent payable under the Lease to Safeway below 100% of the amount payable by the Company for principal and interest on the Debentures.
s{i if:
article x. Merger, Consolidation or Sale.
Section 10.1. The Company agrees that it will not consolidate or merge with or into any other corporation, or sell or transfer all or substantially all of its property and assets to any other corporation, if upon such consolidation, merger, sale or transfer becoming effective any of the property or assets of the Company would become subject to any lien other than liens existing thereon prior thereto, unless prior thereto all the Debentures at the time outstanding shall be directly secured (equally and ratably with any other indebtedness of the Company then entitled thereto) by a mortgage and pledge (free and clear of all prior liens other than those theretofore existing thereon) to the Trustee, in form satisfactory to it, of such of the property and assets of the Company which would upon such consolidation, merger, sale or transfer so become subject to such new lien; but such mortgage and pledge shall be for only so long as such property and assets shall remain subject to such new lien.
Section 10.2. Subject to the provisions of Section 10.1, nothing in this Indenture shall prevent any consolidation or merger of the Company with or into any other corporation, or any sale or transfer of all or substantially all of the property and assets of the Company to any other corporation lawfully entitled to acquire the same; * * *.
* * * * *
article xii. Amendments at Meetings of Debenture-holders.
*538 Section 12.1. Any modifications or alterations of tbis Indenture or of any indenture supplemental hereto or of the Lease to Safeway or of the Instrument of Consent and Agreement or of the rights and obligations of the Company or of the holders of the Debentures and coupons in any particular, or in each or any or all of them, may be made by a resolution duly adopted by the affirmative vote of the holders of at least 60% of the Debentures entitled to be voted upon any such modification or alteration at a meeting of the Debentureholders, duly convened and held pursuant to the provisions of this Article, and approved by resolution of the Board of Directors; * * .
Contemporaneously with the execution and delivery of its indenture, Cortland assigned to the trustee all rent payable under its lease with plaintiff on and 'after April 26, 1955, together with all of Cortland’s right, title and interest in said lease.
18. The original indenture includes as Schedule A executed copies of the Cortland lease to plaintiff, as amended on November 1,1954, and the time of payment of rent by plaintiff, as amended, was as follows:
(a) On October 26 of each year, a sum equal to (i) the provisions made by Cortland on its books for depreciation for the immediate preceding four quarters, plus (ii) the aggregate of Cortland’s estimated operating charges and expenses, excepting Federal and state income taxes, for said preceding four quarters, plus (iii) $140,000, and
(b) On April 26 and October 26 of each year a sum equal to (i) all interest due and payable on the next succeeding interest date upon Cortland’s outstanding debentures, plus (ii) Cortland’s estimated Federal and state income taxes for a two-quarter period.
19. Included in the original indenture as Schedule B was an Instrument of Consent and Agreement executed by plaintiff on November 1,1954, whereby plaintiff:
(a) Consented to Cortland’s assignment to the trustee of all of its rights, title and interest in the lease to plaintiff and all rents payable thereunder on and after April 26,1955, and
(b) Warranted to the trustee:
(i) That the amount of the rents to accrue under the lease, which by the terms of the original indenture was assigned *539 to the trustee, would be sufficient to pay in full as they became due the principal of and interest on all Cortland’s outstanding debentures under the original indenture and any supplemental indenture thereafter made and approved by plaintiff;
(ii) That the consolidated net current assets of plaintiff and its domestic subsidiaries would not be, at any time in which the foregoing assignment was in effect, less than $40,-000,000, or an amount equal to the consolidated funded indebtedness of plaintiff and its domestic subsidiaries, whichever is larger;
(iii) That all financial statements of plaintiff would be footnoted to disclose the existence of the lease;
(iv) That all indebtedness owing at any time by Cortland, or any of its subsidiaries, to plaintiff would be subordinated to prior payment in full of the principal of and interest on the Cortland debentures;
(v) That plaintiff would not permit debentures of Cortland, of all series, to be outstanding in an aggregate principal amount which exceeded 100 percent of the aggregated un-depreciated value of all Cortland’s leased property, or exceeded with all other liabilities of Cortland 80 percent of Cortland’s aggregate assets; and
(vi) That the Series Debentures, Series A, and the 4%% Sinking Fund Debentures, Series B, described in the original indenture shall constitute “Cortland’s approved debentures” under the terms of the lease and of the original indenture.
20. On or about November 1, 1954, the above-described debentures of Cortland were issued and sold to the public.
21. On or about November 1, 1954, Cortland purchased and the trustee affixed to the original indenture United States Internal Bevenue documentary stamps in the face amount of $82,500; such amount was charged on Cortland’s books to the account of “unamortized debenture issue expense” and Cortland’s rental billings to plaintiff included charges aggregating $22,450 from December 31, 1954, to November 3,1956, on such payment. On November 5, 1956, plaintiff assumed Cortland’s unamortized debenture issue expense in connection with the statutory merger of Cortland into plaintiff.
*540 22. Pursuant to the assignment to the trustee of Cortland’s lease to plaintiff, all rent payments accruing thereunder after April 26, 1955, up to November 2, 1956, were paid by plaintiff directly to the trustee who applied such amounts in payment of interest and principal upon Cortland’s debentures. Unexpended amounts after each date of payment by the trustee were made available to Cortland upon its written request, subject to the condition set forth in the original indenture.
23. Prior to August 1956, plaintiff decided to terminate its sales and lease-back arrangement with Cortland, to merge that wholly-owned subsidiary into itself, and to hold the machinery and equipment used in its business directly, instead of holding it in a separate corporate entity from which plaintiff rented it.
24. Under date of September 22, 1956, plaintiff’s counsel addressed a letter to the Acting Chief Counsel, Division of Corporation Finance, Securities and Exchange Commission, which, after referring to the 1954 offering of the Cortland debentures and advising that of such debentures there would be outstanding after November 1,1956, $40,000,-000 of the Series A and $23,000,000 of the Series B, stated in part as follows:
The public offering of the Debentures was made after the Cortland Indenture was qualified under the Trust Indenture Act of 1939 and the Debentures registered under the Securities Act of 1933 by a Kegistration Statement (File No. 21-11202) signed by Safeway as well as Cortland because it was considered by the Commission that the Debentures were obligations not only of Cortland but also of Safeway. As stated in our conference on August 3, it is proposed that Cortland will merge into Safeway and this will involve modifications of the original Indenture. Such modifications will be effected in a supplemental indenture executed by Cortland, specifically authorizing the merger and the execution of another supplemental indenture by Safeway (the Safeway indenture) which will eliminate provisions relating to the lease to Safeway, assignment of rentals and other provisions by way of covenants, conditions or otherwise predicated upon the separate existence of Cortland and a complete restatement of the original Indenture for better application to Safeway *541 and the nature of its business and operations and will include, among other things, restrictions on the creation of additional funded debt and the payment of dividends on Safeway’s stocks. The execution of the two supplemental indentures will be authorized by the affirmative vote of the holders of at least 60% of the outstanding. Debentures at a meeting to be called for such purpose.
The original Indenture provides and the supplemental indenture will provide that any supplement thereto shall conform to the requirements of the Trust Indenture Act of 1939 as then in effect. Neither of the two supplemental indentures will eliminate the provisions in the original Indenture relating to the Trust Indenture Act of 1939.
At our conference in Mr. Heller’s office on August 3 it was concluded that, in connection with the proposed transactions outlined above, it was not necessary to file any registration statement under the Securities Act of 1933 or to qualify under the Trust Indenture Act of 1939 the two supplemental indentures. Counsel for the Trustee has requested that we furnish him written confirmation of this and I will appreciate it very much if you will write me to this effect.
25. On September 28, 1956, the Acting Chief Counsel, Division of Corporation Finance, Securities and Exchange Commission, replied to the aforesaid letter, in part as follows:
The registration statement (File No. 2-11202) under which the debentures were issued and the indenture was qualified was signed both by Cortland and by Safeway because it was considered that the debentures were obligations of both. In connection with the aforementioned merger the indenture will be modified to eliminate provisions relating to the lease to Safeway, assignment of rentals and related provisions and will include, among other things, restrictions on the creation of additional funded debt and the payment of dividends on Safeway’s stocks. The execution of two supplemental indentures for such purposes will be authorized by the affirmative vote of holders of at least 60% of the outstanding debentures at a meeting to be called for such purpose. No provisions of such supplemental indentures will eliminate provisions in the original indenture relating to the Trust Indenture Act of 1939 and it is assumed that they will not conflict with any provisions of said Act.
*542 In. view of the facts of this case, as more particularly set forth in your letter, no action will be recommended by this Division if a registration statement is not filed with respect to the foregoing under the Securities Act of 1933 and if an application is not filed under the Trust Indenture Act of 1939 to qualify the indenture as proposed to be supplemented, in reliance upon your opinion as counsel that such registration and qualification are not required. It would be appreciated if you would send to us copies of such supplemental indentures for our information.
26. On November 2, 1956, Cortland entered into a supplemental indenture with The Chase Manhattan Bank, successor trustee (by merger) to The Chase National Bank of the City of New York, which, after referring to the original Cortland indenture, the lease to plaintiff and assignment of Cortland’s interest therein and rents thereunder to the trustee as security under the indenture, and referring further to plaintiff’s Instrument of Consent and Agreement included in the indenture, and to the amounts of Series A and Series B Debentures thereunder then outstanding, contained the following additional recitals:
wheReas, it is desirable to make the Debentures the direct obligations of Safeway through the merger of Cortland into Safeway and the concurrent execution and delivery by Safeway of the indenture (hereinafter called the “Safeway Indenture”) in substantially the form attached hereto as Schedule A; * * * and
whereas, upon the merger of 'Cortland into Safeway and the concurrent execution and delivery of the Safeway Indenture, Safeway or the Trustee may require Debentures outstanding under the Original Indenture to be exchanged for new Debentures modified to conform to the forms of debentures set forth in the Safeway Indenture; * * *.
and by its terms amended the original indenture by adding a new article, Article XVI, providing in pertinent part as follows:
Section 2. Notwithstanding any of the provisions of the Original Indenture, Cortland may merge into Safeway Stores, Incorporated (hereinafter called “Safeway”) , a Maryland corporation, and the owner of all the issued and outstanding capital stock of Cortland, upon *543 tbe sole condition that concurrently with such merger Safeway and the Trustee execute and deliver an indenture (hereinafter called the “Safeway Indenture”) in substantially the form attached as Schedule A to the Supplemental Indenture and made part thereof and hereof.
Section 3. Upon the merger of Cortland into Safeway and the concurrent execution and delivery by Safeway and the Trustee of the Safeway Indenture:
A. The Serial Debentures, Series A, outstanding under the Original Indenture, shall constitute the Serial Debentures, Series A described in the Safeway Indenture, and the 4*4% Sinking Fund Debenture, Series B, due November 1, 1969, outstanding under the Original Indenture, shall constitute the 414% Sinking Fund Debentures, Series B, due November 1, 1969, described in the Safeway Indenture.
B. The Safeway Indenture shall constitute a complete statement of the Original Indenture as amended and supplemented and all rights of Safeway, the Trustee and the bearers and registered holders of the Debentures shall be fixed and determined by the Safeway Indenture, except that the Original Indenture in its prior form shall remain in effect for the purpose, and only for the purpose, of determining the rights and obligations of the parties thereto and of the Debentureholders in respect of the period preceding the date hereof.
C. The Serial Debentures, Series A, outstanding in the form set forth in the Original Indenture shall be exchanged for Serial Debentures, Series A in the form set forth in the Safeway Indenture, and the 41/4% Sinking Fund Debentures, Series B, due November 1, 1969, outstanding in the form set forth in the Original Indenture shall be exchanged for 414% Sinking Fund Debentures, Series B, due November 1, 1969, in the form set forth in the Safeway Indenture.
D. The lease from Cortland to Safeway, dated as of December 31, 1945, and amended as of November 1, 1954, and the assignment as security under the Original Indenture of Cortland’s interest as lessor and of the right to receive the rents and any other amounts payable under said lease, and the Instrument of Consent and Agreement dated as of November 1, 1954, executed by Safeway, shall be cancelled and terminated.
27. On November 5, 1956, Articles of Merger (executed October 31, 1956), merging Cortland into plaintiff, were *544 filed and accepted by the Maryland State Tax Commission. Article 9 of tlie merger provided in part:
9. Upon the merger becoming effective
(a) the separate existence of Cortland shall cease;
(b) Safeway, the surviving corporation, shall continue to possess all the purposes and powers theretofore possessed by it and the merger shall not effect any amendment of the charter of Safeway ;
(c) All the property, rights, privileges and franchises, of whatsoever nature and description, of Cortland, including choses in action, shall be transferred to, vested in and devolved upon Safeway without further act or deed. Notwithstanding the provisions of this subsection (c), confirmatory deeds, assignments or other like instruments, when deemed desirable to evidence such transfer, vesting or devolution of any property, right, privilege or franchise, may at any time, or from time to time, be made and delivered by Cortland by the last acting officers thereof, or by the corresponding officers of Safeway;
(d) Safeway shall be liable for all the debts and obligations of Safeway and Cortland; * * *.
28. On November 5, 1956, plaintiff, designated therein as the “Company”, and The Chase Manhattan Bank, as trustee, executed an indenture, hereinafter called the Safeway indenture, containing the following recitals:
whereas, Cortland Equipment Lessors, Incorporated, a Maryland corporation and a wholly-owned subsidiary of the Company (hereinafter called “Cortland”) and The Chase National Bank of the City of New York, as Trustee, executed and delivered an indenture, dated as of November 1,1954, and Cortland and The Chase Manhattan Bank, as successor Trustee, executed and delivered a Supplemental Indenture, dated as of November 2,1956, to said indenture, which indenture as supplemented by said Supplemental Indenture is hereinafter called the “Original Indenture”; and
whereas, Cortland has outstanding under the Original Indenture a series of Debentures designated Serial Debentures, Series A, in the aggregate principal amount of $40,000,000 (of an original issue of $50,000,000) and a series designated 4%% Sinking Fund Debentures, Series B, due November 1, 1969 in the aggregate principal amount of $23,000,000 (of an original issue of $25,000,000); and
*545 whekeas, concurrently with, the delivery of this supplemental indenture which is a further supplement to the Original Indenture, Cortland is being merged into the Company; and
whereas, effective upon such merger and the execution and delivery of this supplemental indenture, the Series A Debentures and Series B Debentures outstanding under the Original Indenture will constitute the Series A Debentures and Series B Debentures under this supplemental indenture upon the terms and conditions herein set forth; and
whereas, it is desirable to incorporate and restate in this supplemental indenture all the provisions of the Original Indenture as modified, altered and restated by this supplemental indenture to the end that this supplemental indenture shall constitute a complete statement of the Original Indenture as so modified and altered; and * * *.
and providing in Section 1.1 of Article I, entitled “Assumption, Exchange and Redemption of Debentures Issued by Cortland Equipment Lessors, Incorporated,” as follows:
Section 1.1. Concurrently with the execution and delivery of this Indenture, Cortland Equipment Lessors, Incorporated was, in accordance with the laws of Maryland, merged into the Company and as a result thereof the Company became obligated to pay the principal and premium, if any, and interest of all Series A Debentures and Series B Debentures issued under the Original Indenture according to their tenor; and, as a result of such merger and the execution of this Indenture, the Series A Debentures and Series B Debentures outstanding under the Original Indenture constitute the Series A Debentures and Series B Debentures described in this Indenture; and the Company will duly and punctually pay the principal and premium, if any, of and interest on all Series A Debentures and Series B Debentures according to their tenor, and will duly and punctually perform and observe all covenants and conditions of the Original Indenture as modified by this Indenture and of each indenture supplemental hereto to be kept or performed by the Company.
29. Both the original Cortland indenture and the Safeway indenture set forth the form of the respective debentures. Such forms were alike in their terms and each made refer *546 ence to the original Cortland indenture and any supplements thereto, but the form of the Safeway debenture named plaintiff only as the obligor.
The Safeway indenture differed from the Cortland indenture in that Safeway became the obligor on the debentures to be exchanged for the Cortland debentures, rather than guarantor of the Cortland debentures, and also differed in that it eliminated provisions relating to the lease to Safeway, the assignment of rentals, statements about Cortland’s separate existence, and included restrictions on the creation of additional funded debt by Safeway and its domestic corporations, and restrictions on the payment of dividends on Safeway stock. In other respects, the Safeway indenture and the Cortland indenture were alike in their terms.
30. Each of plaintiff’s Series A Debentures and Series B Debentures contained in part the following statement:
This Debenture is one of a duly authorized issue of debentures of the Company (herein called the “Debentures”), in unlimited aggregate principal amount, of the series hereinafter specified, all issued and to be issued under an indenture, dated as of November 1, 1954, between the Company (successor by merger to Cortland Equipment Lessors, Incorporated) and The Chase Manhattan Bank (successor by merger to The Chase National Bank of the City of New York), as Trustee, and indentures supplemental thereto.
31. Both the supplemental Cortland indenture and the Safeway indenture contained the provisions of the original indenture relating to the Trust Indenture Act of 1939, conforming to the statutory requirements.
Both the supplemental Cortland indenture and the Safeway indenture were authorized by the affirmative vote of the holders of at least 60% of the outstanding Cortland debentures at a meeting called for that purpose.
32. Pursuant to the Safeway indenture, plaintiff exchanged with the holders of the various classes of outstanding Cortland debentures (i) its Coupon Serial Debentures, Series A and its Serial Debentures, Series A without coupons, and (ii) its Coupon 4(4% Shaking Fund Debentures, Series B, and registered 4(4% Sinking Fund Debentures, Series B, without coupons, the aggregate amounts of each class of *547 plaintiff’s debentures being equivalent to the amounts of the respective Cortland debentures for which they were exchanged.
33. Plaintiff’s Series A Coupon and Series B Coupon Debentures and the interest coupons in respect thereof were dated “as of the first day of November 1954.”
34. Plaintiff’s debentures exchanged for those issued by Cortland were identical with the Cortland debentures with respect to maturity date, interest rate, premiums payable upon redemption, rights of holders thereof upon default, restrictions upon modification or alterations, transferability and all other terms.
35. Chief Counsel, Division of Corporation Finance, Securities and Exchange Commission, who was the addressee of the letter quoted in finding 24, and the author of the letter quoted in finding 25, testified that the Securities and Exchange Commission did not require Cortland to qualify its supplemental indenture nor plaintiff to qualify the Safeway indenture because Cortland’s original indenture had been qualified as containing the necessary statutory requirements, because each of the subsequent indentures contained the same necessary provisions, and while technically the Safeway indenture might be considered to be a new indenture, requiring qualification would have been “primarily paper shuffling,” with no purpose served.
He testified that the staff of the Commission did not require plaintiff to register the Safeway debentures because such registration is not required unless there is 'both a new security and a sale thereof; that the changes effected in the indentures, such as the elimination of the sale lease-back arrangement, were not sufficient to constitute a new security; that while the Safeway debentures may have constituted a new security, there was no sale thereof; that while an exchange of securities could be treated as a sale, it was decided that the change of obligor on the debentures did not constitute a sale because the debenture holders under the terms of the original indenture had no right to object to the exchange.
He further explained that his letter quoted in finding 25 was a “no-action” letter issued when the Securities and Ex *548 change Commission intends not to institute any action on a matter, without prejudicing the rights of private parties on the questions involved.
36. On or about November 5, 1956, plaintiff purchased and affixed to the Safeway indenture United States Internal Revenue documentary tax stamps in the amount and value of $69,300.
37. On October 22, 1959, plaintiff filed with the District Director of Internal Revenue, at New York, New York, a claim for refund of the above documentary stamp tax of $69,300, plus interest, 'based upon the grounds set forth in the petition herein. On September 7, 1960, defendant notified plaintiff by certified mail that the aforesaid claim was disallowed.
CONCLUSION OE LAW
Upon the foregoing findings of fact which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and judgment is entered for defendant. Plaintiff’s petition is dismissed.